UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARCY VAN PELT,

        Plaintiff,

v.                                                         Case No.  4:04-CV-47

GREG CORDES and                          HON. GORDON J. QUIST
JEFFREY MALCOLM,

        Defendants.

_____/

**<u>OPINION</u>**

Plaintiff, Marcy Van Pelt ("Van Pelt"), has sued Defendants, Greg Cordes and Jeffery Malcolm (individually "Officer Cordes" and "Officer Malcolm" and collectively "Defendants"), public safety officers for the City of Kalamazoo, ("Officer Lobsinger") (collectively "Defendants"), alleging claims under 42 U.S.C. § 1983 for violation of her Fourth, Fifth, and Fourteenth Amendment rights based upon unlawful search, seizure of property, arrest, and use of force.  In addition, Van Pelt alleges state law claims for assault and battery, false arrest, false imprisonment, and malicious prosecution.  The claims arise out of Defendants' entry into Van Pelt's apartment, seizure of her property, and arrest of Van Pelt on March 6, 2003.[1]  Now before the Court are Van Pelt's motion for partial summary judgment on her claims of unlawful entry, seizure, and arrest and Defendants' motion for summary judgment on all claims.  For the reasons stated below, the Court will grant Van Pelt's motion and deny Defendants' motion.

_____

[1]Van Pelt also sued the City of Kalamazoo alleging municipal liability under 42 U.S.C. § 1983.  The City has since been dismissed from this case.

# I. Facts

On March 6, 2003, Officer Cordes went to the Hot 'N' Now restaurant located on Drake Road in Kalamazoo in response to a call from Willie Chatman ("Chatman"), who was employed at the restaurant. Chatman reported that someone had broken off keys in the doors of his car. When Officer Cordes arrived, no suspect was present, but Chatman told Officer Cordes that he suspected that his girlfriend, Van Pelt, had done it. Chatman also told Officer Cordes that he wanted to go to 4309 Lakesedge, Apartment B, Kalamazoo (the "apartment"), where he was living with Van Pelt, in order to retrieve some clothes and other property from the premises and that he wanted a police escort in order to prevent an altercation with Van Pelt.[2] Chatman had previously lived or stayed with Van Pelt from time-to-time in the apartment and/or elsewhere and they had a child together. However, in November 2002, the couple had a domestic altercation and the police arrested Chatman. As a result of the incident, a court issued a conditional bond prohibiting Chatman from having contact with Van Pelt. (Trial Tr. at 42-43 (Van Pelt); Marcy Van Pelt Dep. at 43, Pl.'s Br. Supp. Ex. 4; Chatman Dep. at 19-21, Pl.'s Br. Supp. Ex.) Thus, contrary to what he told Officer Cordes, Chatman was not living in the apartment on March 6, 2003. (9/13/03 Trial Tr. at 42; Marcy Van Pelt Dep. at 47; Chatman Dep. at 75-76.)

Officer Cordes agreed to take Chatman to the apartment to retrieve his property. On the way, Chatman advised Officer Cordes that another officer should be present because Van Pelt might cause

---

[2]Officer Cordes testified that Chatman told him that he was living at the apartment. (9/12/03 Trial Tr. (hereafter "Trial Tr.") at 7, Pl.'s Br. Supp. Ex. 3; Cordes Dep. at 12, Pl.'s Br. Supp. Ex. 8.) On the other hand, Chatman testified that he did not tell Officer Cordes that he was living at the apartment with Van Pelt, but only that he had personal belongings there. Chatman also testified that he told Officer Cordes that he had not been in the apartment since November 2002. (Chatman Dep. at 37, 39, Pl.'s Br. Supp. Ex. 6.) Although there is a factual dispute on this issue, for purposes of this motion the Court will assume that Chatman told Officer Cordes that he lived at the apartment.

a problem, so Officer Cordes contacted dispatch and requested that another officer meet them at the at the apartment.

When Officer Cordes and Chatman arrived at the apartment, they were met by Officer Malcolm.  Officers Cordes and Malcolm approached the door of the apartment and Chatman followed behind.  Officer Cordes knocked on the door.  After several moments, Van Pelt, who had recently undergone neck surgery, opened the door wearing a neck brace.  Officer Cordes explained to Van Pelt that they were there to help Chatman obtain his property and requested permission to enter.  (Cordes Dep. at 25.)  Van Pelt, who already appeared to be angry, began yelling at Defendants and Chatman in a loud, angry tone.  (Id.; Malcolm Dep. at 16-17, Pl.'s Br. Supp. Ex. 7; Trial Tr. at 9-10 (Cordes).)  Van Pelt told Defendants several times that Chatman did not live there, that he did not have any property in the apartment, that he was not on the lease, and that he had been removed from the apartment in November 2002.  (Trial Tr. at 9-10, 24-25 (Cordes), 43 (Van Pelt); Cordes Dep. at 25-26; Malcolm Dep. at 17.)  Van Pelt also told Defendants that they could not enter her apartment without a search warrant.  (Trial Tr. at 43 (Van Pelt); Chatman Dep. at 51.)  Van Pelt repeated her objections at least twice and continued to refuse to allow Defendants to enter.  (Cordes Dep. at 26.)  Initially, Van Pelt spoke to Defendants through the door with the chain on, but at the urging of her brother, Sean, who was taking care of Van Pelt and her two children, she unlatched the door to speak with Defendants.  (Sean Van Pelt Dep. at 30, Pl.'s Br. Supp. Ex. 5.)  At that time, Officer Cordes asked *Chatman* for permission to enter the apartment.  (Cordes Dep. at 73.) *Chatman* gave his permission, and Defendants entered the apartment.  (Id.)

When Defendants and Chatman entered, Van Pelt continued to scream and swear at Defendants, telling them to leave.  (Malcolm Dep. at 33, 37; Marcy Van Pelt Dep. at 101.)  Besides

3

yelling, Van Pelt, while carrying her baby, hit walls and doors with her free hand and damaged a

sliding closet door.  (Trial Tr. at 10 (Cordes); Cordes Dep. at 32.)  Van Pelt then ran into her

bedroom and slammed and locked the door.  After the officers told Van Pelt that they would arrest

her if she did not open the door, Van Pelt opened the door and began throwing clothes out at

Defendants and Chatman.  Defendants apparently believed that the clothes belonged to Chatman.

(Cordes Dep. at 35; Malcolm Dep. at 37-38.)  In reality, the clothes belonged to Van Pelt or her

brother, and she was throwing them out in order to get Defendants and Chatman to leave.  (Marcy

Van Pelt Dep. at 107-09; Sean Van Pelt Dep. at 36.)  The officers instructed Chatman to pick up the

clothes and put them into plastic bags and assisted Chatman in carrying the bags to Officer Cordes'

police cruiser.  (Cordes Dep. at 35-36; Malcolm Dep. at 39.)  As Officer Malcolm was carrying a

bag of clothing toward the door, he grabbed a vacuum cleaner that Chatman indicated belonged to

him.[3]  (Malcolm Dep. at 39-40; Trial Tr. at 36; Sean Van Pelt Dep. at 43; Chatman Dep. at 56-57.)

Van Pelt grabbed the vacuum cleaner when she saw Officer Malcolm carrying it out the door.  Van

Pelt told Officer Malcolm that the vacuum cleaner was hers and Chatman could not have it.  (Trial

Tr. at 36; Sean Van Pelt Dep. at 44.)  As Van Pelt and Officer Malcolm struggled over the vacuum

cleaner, Van Pelt fell face-first on top of it.  According to Van Pelt, Officer Malcolm pushed or

threw her on top of the vacuum cleaner.  (Marcy Van Pelt Dep. at 115-16, 123-24; Sean Van Pelt

Dep. at 46.)  On the other hand, Officer Malcolm claims that Van Pelt slipped and fell onto the

vacuum cleaner as he attempted to place handcuffs on her.  (Trial Tr. at 36-37 (Malcolm); Malcolm

Dep. at 42-43.)  In any event, at that point, Defendants arrested Van Pelt and placed the vacuum

---

[3]There is some dispute as to who initially picked up the vacuum cleaner and when Officer Malcolm first
possessed it.  This dispute need not be resolved for purposes of the instant motions because it is undisputed that Officer
Malcolm grabbed the vacuum cleaner at some point and refused to let Van Pelt keep it.

cleaner in Officer Cordes' cruiser.  Van Pelt was taken to jail charged with resisting and obstructing and with disturbing the peace, but the latter charge was dismissed.

On September 12, 2003, Van Pelt was tried on the resisting and obstructing charge in a bench trial before Judge Vincent C. Westra.  At the conclusion of the evidence, Judge Westra found Van Pelt not guilty.  He concluded that the officers' entry into the apartment was unlawful because it lacked valid consent.  Van Pelt thereafter filed this action.

## II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are facts which are defined by substantive law and are necessary to apply the law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992)(quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III.  Discussion

As mentioned above, Van Pelt alleges claims for unlawful search or entry, seizure of property, arrest, and use of force, in addition to various state law claims.  Defendants request summary judgment on all claims on the grounds that they are entitled to qualified immunity on Van Pelt's claims under 42 U.S.C. § 1983 and that Van Pelt's state law claims are barred by statutory

5

governmental immunity.[4]  In her motion, Van Pelt requests summary judgment on all of her § 1983 claims except the excessive force claim.

A.    **Defendants' Motion**

   **1. Claims Under 42 U.S.C. § 1983**

Qualified immunity shields "[g]overnment officials performing discretionary functions" from liability for civil damages "as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Poe v. Haydon, 853 F.2d 418, 423 (6th Cir. 1988)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2735 (1982)).  A law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [] officer[] possessed."  Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040 (1987).  In Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court addressed the qualified immunity inquiry in the context of a Fourth Amendment claim.  The Court stated that the initial inquiry must be as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. 201, 121 S. Ct. at 2156.  If the answer to the first question is yes, the next question is whether that right was clearly established, an "inquiry . . . [that] must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . .  If the law did not put the officer on notice that his

---

[4]In their motion and brief, Defendants address Van Pelt's unlawful entry and excessive force claims but they do not mention her claims of unlawful seizure of property and unlawful arrest.  However, because Van Pelt moves for summary judgment on those claims, the Court will also consider whether qualified immunity applies to those claims.

conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."

Id. at 202, 121 S. Ct. at 2156-57.  See also Akers v. McGinnis, 352 F.3d 1030, 1042 (6th Cir. 2003).

The Sixth Circuit has described the procedure for determining qualified immunity as follows:

> The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999)(en banc)(citing Dickerson v. McClellan, 101 F.3d 1151, 1157-58 (6th Cir. 1996)).

To be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation."  Long v. Norris, 929 F.2d 1111, 1114 (6th Cir. 1991).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing" violates federal law.  Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). While replication of the official's specific conduct is not required to overcome qualified immunity, "'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.'"  Saylor v. Bd. of Educ., 118 F.3d 507, 515 (6th Cir. 1997)(quoting Lassiter v. Ala. A & M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994)(en banc)). In the Sixth Circuit, courts look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, and finally to decisions of other circuits.  See Gardenhire v. Schubert, 205 F.3d 303, 311 (6th Cir. 2000).

7

### a.    Unlawful Search or Entry

The Fourth Amendment preserves the right of citizens "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Generally, to satisfy the Fourth Amendment's reasonableness requirement, a search or seizure must be "accomplished pursuant to a judicial warrant issued upon probable cause." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 619, 109 S. Ct. 1402, 1414 (1989).  One of the well-recognized exceptions to the warrant requirement is consent to the search.  See Shamaeizadeh v. Cunigan, 338 F.3d 535, 547 (6th Cir. 2003) ("Consent from an individual whose property is to be searched or from a third party who possesses common authority over the premises validates a search that would otherwise be considered unreasonable and unconstitutional.") (citing United States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974)).  To be valid, consent must be freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792 (1968).  "Consent is voluntary when it is 'unequivocal, specific and intelligently given, uncontaminated by any duress or coercion.'" United States v. Ivy, 165 F.3d 397, 402 (6th Cir. 1998) (quoting United States v. McCaleb, 552 F.2d 717, 721 (6th Cir. 1977)).  In determining whether consent was voluntary, a court must examine the totality of the circumstances.  See Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S. Ct. 2041, 2048 (1973).

Consent may also come from a third party.  Third party consent is valid if the third party possessed common authority over the place to be searched.  See Matlock, 415 U.S. at 171, 94 S. Ct. at 993 (stating that the government "is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected").

8

Valid third party consent may also be found "when officers . . . reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises." <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 186, 110 S. Ct. 2793, 2800 (1990). The Supreme Court cautioned in <u>Rodriguez</u> that its ruling should not be taken to mean that a third party's naked assertion of authority is always an objectively reasonable basis for inferring consent:

> Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L. Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

<u>Id.</u> at 188-89, 110 S. Ct. at 2801. <u>See also</u> <u>United States v. Gillis</u>, 358 F.3d 386, 391 (6th Cir. 2004) (holding that police officers could reasonably conclude that the defendant's girlfriend had apparent authority to consent to the search where the defendant's girlfriend provided the officers detailed information about the premises and the location of drugs and said that she continued to reside at the residence and had been there earlier that day).

Although they do not expressly say so in their brief, Defendants appear to suggest that Van Pelt gave consent to their entry into the apartment. This argument must be rejected, because it is built on a house of cards and, even if it had any substance, at a minimum the evidence is in dispute. Defendants' argument is based upon the following: (1) Officer Cordes' deposition testimony that Van Pelt opened the door and either stepped aside or made some vague gesture (Cordes Dep. at 79, 86-88); (2) Officer Malcolm's deposition testimony that Van Pelt gave some indication, verbal or physical, possibly a waive of her arm, suggesting that she was permitting the officers to enter

9

(Malcolm Dep. at 19-21); and (3) Officer Malcolm's testimony that Chatman held up a key and said it was a key to the apartment and Van Pelt did not dispute Chatman's assertion (id. at 19, 29-30, 65-66). First, the argument fails because the evidence, viewed in a light most favorable to Van Pelt, shows that Van Pelt did not consent. Sean Van Pelt testified that Van Pelt opened the door at his urging to cooperate and see what the officers wanted and that "when she shut the door, she unlatched it, she opened up the door, the two officers just came in." (Sean Van Pelt Dep. at 30.) Similarly, Van Pelt testified that the officers backed her into the apartment by nudging or pushing her. (Van Pelt Dep. at 103.) Second, neither Officer Cordes nor Officer Malcolm documented Van Pelt's alleged consent in their police report, even though they are trained to do so. (Police Reports, Pl.'s Br. Supp. Ex. 1.) Third, the evidence Defendants cite fails to show that Van Pelt did anything unequivocal that might be construed as consent. Opening one's door for a police officer and making some vague gestures cannot be construed as consent by ordinary citizens, much less by serious police officers acting professionally. While stepping back or aside to allow officers to enter a dwelling might be sufficient to constitute assent under some circumstances, see United States v. Carter, 378 F.3d 584, 588 (6th Cir. 2004) (en banc), the facts here, as Defendants admit, are that Van Pelt loudly, angrily and verbally denied consent both before and after Defendants entered the apartment. So, even if some vague gesture indicated to Defendants that they could enter the apartment, which is not reasonable, even that permission was withdrawn shortly thereafter, and Defendants were informed of their "mistaken" impression. Fourth, even if accepted, Officer Malcolm's testimony regarding a key is unavailing because there is no evidence that Van Pelt

actually saw, or acknowledged that she saw, Chatman show the alleged key to Officer Malcolm.[5] Finally, in light of Defendants' admissions that Van Pelt loudly, angrily, and clearly told Defendants that Chatman did not live there or have property there and that they could not come in, (Trial Tr. at 25 (Cordes) ("It was clear that she did not want us in the house, yes.); Cordes Dep. at 26 ("She was still very angry with us, and I don't remember specifically what her response was, but she definitely still did not want to let us in."); Malcolm Dep. at 18 ("Initially she said no, and said that we couldn't come in without a warrant.")), and that Van Pelt told them to leave after they entered, (Malcolm Dep. at 31-32 (stating that Van Pelt said something like "get out of the apartment")), no reasonable police officer could have believed that Van Pelt consented to the entry.

Defendants make no claim that Chatman had actual authority.  Instead, they argue that they reasonably could conclude from the surrounding circumstances that Chatman had apparent authority to give consent.  Defendants point to the following: (1) Chatman claimed residency at the apartment; (2) Chatman said that his car had been vandalized and his girlfriend, who lived a half mile away, was a suspect; (3) Chatman went to the apartment with Officer Cordes; (4) Chatman showed a key to Officer Malcolm, claiming that it was to the apartment, and Van Pelt did not dispute that assertion; (5) after Chatman displayed the key, Van Pelt opened the door, stepped back, and the officers entered; (6) after the officers entered, Van Pelt began throwing clothes from her bedroom and Chatman picked them up and put them in a bag, thus confirming his story that he had clothes in the apartment.  Apart from the fact that many of these assertions are subject to dispute, even if taken at face value and considered together, these circumstances cannot support a claim that

---

[5]Although credibility determinations are not proper on summary judgment, the Court notes that Officer Malcolm's testimony regarding the key is suspect, in light of the fact that he did not mention a key in his report, he did not testify about the key at the state court trial, and Officer Cordes did not mention Chatman showing a key at the apartment in his report, during the state court trial, or during his deposition.

Defendants had a reasonable basis for concluding that Chatman had apparent authority to consent. As noted above, Defendants admit that throughout the entire incident, Van Pelt told Defendants that Chatman did not live in or have property in the apartment and had no right to go inside.  In the face of Van Pelt's objections, it was unreasonable for Defendants to act upon Chatman's assertions without further inquiry, as required by Rodriquez.  Even if Chatman did show Officer Malcolm a key, that fact does not help Defendants, because there is no evidence that Chatman used the key to open the door or that Officer Malcolm did anything to verify that it was actually a key to the apartment and both Defendants testified that they relied upon Chatman's verbal consent to enter the apartment.  Furthermore, even if Chatman showed Defendants a key that opened the apartment door, Van Pelt's objections still should have put Defendants on notice that further inquiry was required. Similarly, Defendants cannot rely upon Chatman's after-the-fact placing of clothes into bags as corroboration of his claim of authority to consent.  See Rodriguez, 497 U.S. at 188-89, 110 S. Ct. at 2801 (stating that a warrantless search is valid when the officers rely upon a person's apparent authority and that reliance is in good faith and reasonably based on all facts known by the police at the time of the search).

The cases Defendants cite are both distinguishable and unavailing.  In Harajli v. Huron Township, 365 F.3d 501 (6th Cir. 2004), the third party (the plaintiff's estranged wife) provided the police with a written statement listing the residence as her residence and actually accessed the residence with a garage door opener.  And, in Rhodes v. McDannel, 945 F.2d 117 (6th Cir. 1991) (per curiam), the third party had previously called the police from the home, occasionally lived there, and referred to the residence as her home address.  Most importantly, neither of these cases

12

involved a situation where an occupant of the premises disputed the third party's claim of residency at the time the police requested consent to enter.

Having concluded that Van Pelt has presented sufficient evidence to show that a constitutional violation has occurred, the Court must next determine whether that right was clearly established. Viewing the facts in a light most favorable to Van Pelt, the answer is unquestionably yes. In contrast to Defendants' testimony, Chatman testified that he did not tell Defendants that he lived at the apartment and he told them that he did not have a key. (Chatman Dep. at 37-39.) If the jury chooses to believe this testimony and the testimony of Van Pelt, there would be absolutely no basis, reasonable or otherwise, for Defendants to conclude that they had consent for their warrantless entry. Defendants' actions would be objectively unreasonable because a reasonable officer in Defendants' position would have known that a warrantless search without consent ( or some other applicable exception) violates the Fourth Amendment. Moreover, Defendants do not argue, and the Court cannot conceive, that any governmental interest at issue in this case outweighs Van Pelt's Fourth Amendment rights. See Thomas v. Cohen, 304 F.3d 563, 575 (6th Cir. 2002) (concluding that the defendant police officers' eviction of the plaintiffs, without a court order, with active participation in the illegal seizure, and in the face of the plaintiffs' claims of legal residency, was objectively unreasonable). Thus, the Court will deny Defendants' motion on this claim.

     **b.**  **Unlawful Seizure**

Van Pelt claims that Defendants committed an unlawful seizure by taking clothes and a vacuum cleaner from her apartment. Defendants did not address this claim in their motion, but the Court will address it at this point because Defendants have moved for summary judgment on all claims.

13

The Fourth Amendment prohibits unreasonable seizures of personal property.  See Farm Labor Org. Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 543 (6th Cir. 2002).  In discussing the Fourth Amendment's application to seizures of property, the Supreme Court has stated: "In the ordinary case, the Court has viewed a seizure of property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accompanied by a search warrant."  United States v. Place, 462 U.S. 696, 701, 103 S. Ct. 2637, 2641 (1983).  Apart from the Fourth Amendment, the Fifth and Fourteenth Amendments prohibit the government from depriving a citizen of property without providing notice and an opportunity to be heard.  See United States v. James Daniel Good Real Prop., 510 U.S. 43, 48, 114 S. Ct. 492, 498 (1993).  Thus, a seizure of real property may give rise to separate violations of both the Fourth and Fifth Amendments.  See id. at 49-50, 114 S. Ct. at 499 (citing Soldal v. Cook County, 506 U.S. 56, 70, 113 S. Ct. 538, 548 (1992)).

The Supreme Court has recognized that a police officer's participation in an improper eviction (without a court order) constitutes a seizure under the Fourth Amendment.  Soldal v. Cook County, Ill., 506 U.S. 56, 113 S. Ct. 538 (1992).  In contrast, an officer's conduct in a "civil standby" will not violate the Fourth Amendment where the conduct is limited to keeping the peace.  See Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc., 32 F.3d 989, 995 (6th Cir. 1994).  In this case, Defendants did not merely conduct a "civil standby" in which they simply monitored the situation and sought to keep the peace.  Instead, Defendants, without the benefit of a court order, sided with Chatman, interjected themselves directly into the situation, and facilitated the seizure by helping Chatman gain access to the apartment and by assisting Chatman in taking Van Pelt's property.  Therefore, Van Pelt has shown that Defendants committed an unlawful seizure of her property.

14

In light of <u>Soldal</u> and <u>Haverstick Enterprises</u>, the Court also concludes that Van Pelt's rights were clearly established and that it would have been clear to a reasonable police officer that assisting Chatman in the manner Defendants did would be unlawful. Moreover, in light of clearly established law, Defendants' actions were objectively unreasonable.

### c.    Unlawful Arrest

Van Pelt also claims that Defendants' arrest of her for resisting and obstructing was unlawful because it was not supported by probable cause. As with the claim of unlawful seizure of property, Defendants did not address this claim in their brief.

A police officer has probable cause to make an arrest "if the facts and circumstances within [his] knowledge were 'sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.'" <u>Avery v. King</u>, 110 F.3d 12, 14 (6th Cir. 1997) (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964)). In determining whether there is probable cause to make an arrest, an officer must consider the "totality of the circumstances" and cannot "look only at the evidence of guilt while ignoring all exculpatory evidence." <u>Gardenhire v. Schubert</u>, 205 F.3d 303, 318 (6th Cir. 2000). "The existence of probable cause in a section 1983 action presents a jury question, unless there is only one reasonable determination possible." <u>Diamond v. Howd</u>, 288 F.3d 932, 937 (6th Cir. 2002) (quoting <u>Klein v. Long</u>, 275 F.3d 544, 550 (6th Cir. 2001)).

Van Pelt was arrested for violating M.C.L.A. § 750.479, which provides, in part:

(1) A person shall not knowingly and willfully do any of the following:

(a) Assault, batter, wound, obstruct, or endanger a . . . officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise acting in the performance of his or her duties.

(b) Assault, batter, wound, obstruct, or endanger an officer enforcing an ordinance, law, rule, order, or resolution of the common council of a city board of trustees, the

15

> common council or village council of an incorporated village, or a township board
> of a township.

M.C.L.A. § 750.479(1).  There is no evidence that Defendants had probable cause to arrest Van Pelt

for violating this statute.  Defendants were not serving process or attempting to enforce any

ordinance, law, rule, or order.  Rather, they were involved in a purely private dispute in which they

had taken sides and were acting beyond their lawful authority.  For her part, Van Pelt was merely

attempting to prevent the unlawful seizure of her vacuum cleaner and she informed Officer Malcolm

that the vacuum cleaner belonged to her.  Given Van Pelt's assertion that she owned the vacuum

cleaner, Van Pelt's act of grabbing her vacuum cleaner did not amount to probable cause for an

arrest.

### d.     Excessive Force

Defendants argue that they are entitled to summary judgment on Van Pelt's excessive force

claim because the facts do not support a claim that Officer Malcolm used excessive force to arrest

Van Pelt.  Van Pelt's excessive force claim must be analyzed under the Fourth Amendment's

standard of objective reasonableness.  Graham v. Connor, 490 U.S. 386, 395-96, 109 S. Ct. 1865,

1871 (1989).  This standard must be applied in light of the reality that "police officers are often

forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly

evolving." Id. at 397, 109 S. Ct. at 1872.  Thus, "the 'reasonableness' of a particular use of force

must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight." Id. at 396, 109 S. Ct. at 1872.  In determining whether an officer's actions were

reasonable, a court must examine the specific facts of the case.  Kostrzewa v. City of Troy, 247 F.3d

633, 639 (2001)(citing Graham).  Factors that bear on the issue are: (1) the severity of the crime at

issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is cooperating or is actively resisting arrest or attempting to flee. Id.

Applying these principles to the evidence, construed in favor of Van Pelt, the Court concludes that Van Pelt has presented sufficient evidence to establish an excessive force claim. First, Van Pelt was arrested for obstructing Officer Malcolm by grabbing her vacuum cleaner in order to prevent Officer Malcolm from taking it. This was not a severe offense and, as indicated above, the evidence shows that both Defendants caused the circumstances giving rise to the arrest by unlawfully entering Van Pelt's residence and seizing her property. Moreover, as indicated above, Defendants had no legal basis for going into the apartment in the first place and did not have probable cause to arrest her. Second, the evidence shows that Van Pelt was not posing an immediate threat to Defendants or to anyone else by grabbing her vacuum cleaner. Finally, Van Pelt testified that she merely grabbed her vacuum cleaner and that Officer Malcolm threw her down on top of it and put his knees into her spine. Based upon this evidence, a reasonable jury could conclude that Officer Malcolm's actions were objectively unreasonable.

Having concluded that the evidence presents an issue of fact for the jury, the Court also concludes that Officer Malcolm is not entitled to qualified immunity. It is clearly established that under the Fourth Amendment, an individual has a right to be free from the excessive use of force during an arrest. Graham, 490 U.S. at 395-96, 109 S. Ct. at 1871. Because the evidence in this case is sufficient to establish that Officer Malcolm's conduct was unreasonable, Defendants are not entitled to qualified immunity on the excessive force claim. See Minchella v. Bauman, No. 02-1454, 2003 U.S. App. LEXIS 16844 (6th Cir. Aug. 13, 2003). However, because there is no evidence that

17

Officer Cordes used any force against Van Pelt, the Court will dismiss any such claim against him.

### 2.     State Law Claims

Defendants contend that they are entitled to summary judgment on Van Pelt's state law claims because Defendants actions are shielded by the governmental immunity statute, M.C.L.A. § 691.1407.  The Court rejects this argument.  Van Pelt's claims for assault and battery, false arrest, false imprisonment, and malicious prosecution are intentional torts.  See Darden v. City of Ann Abor, No. 227063, 2002 WL 410209, at *2 (Mich. Ct. App. Mar. 15, 2002) (per curiam) (citing Adams v. Nat'l Bank of Detroit, 444 Mich. 329, 334 n.6, 508 N.W.2d 464, 465 n.6 (1993)).  An individual employee's intentional torts are not shielded by the governmental immunity statute.  See Sudul v. City of Hamtramck, 221 Mich. App. 455, 458, 562 N.W.2d 478, 479 (1997).  Therefore, the Court will deny summary judgment to Defendants on the state law claims.

### B.     Van Pelt's Motion

### 1.     Unlawful Search or Entry

Van Pelt contends that she is entitled to summary judgment on her claim that Defendants' entry into her residence violated the Fourth Amendment because, even construing the evidence in a light most favorable to Defendants, there is no dispute that Van Pelt did not give consent and that Defendants could not reasonably believe that Chatman had apparent authority to consent.  As discussed above, Officer Cordes and Officer Malcolm both testified that Van Pelt stated in no uncertain terms that she did not want them in her apartment both before and after they entered.  This evidence is sufficient to establish, as a matter of law, that Van Pelt did not consent. With regard to the apparent authority issue, Defendants' best case is that they were confronted with two conflicting stories: (1) Van Pelt said that Chatman did not live there, did not have property there,  was not on

18

the lease, and had been escorted out of the apartment by the police in November because of a domestic violence incident; and (2) Chatman's claim that he lived in the apartment and had property there.  Given this situation, and in light of Van Pelt's clear indication that she was not consenting, Defendants could not have reasonably concluded that Chatman had apparent authority to give consent without further inquiry to resolve the uncertainty.

        With regard to qualified immunity, the law was clearly established at the time of the incident that a police officer's belief that a third party has apparent authority to consent must be reasonable. The Supreme Court has stated that to be "clearly established" it is not necessary that "the very action in question has previously been held unlawful," but rather "in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3934, 3039 (1987).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id.  Given the conflicting information Defendants possessed regarding Chatman's claim of residency, "the surrounding circumstances . . . [were] such that a reasonable person would doubt its truth and not act upon it without further inquiry."  Therefore, the unlawfulness of Defendants' actions should have been apparent, and Van Pelt is entitled to summary judgment on this claim.

        **2.      Unlawful Seizure of Property**

        Van Pelt also contends that she is entitled to summary judgment on her claim that Defendants violated the Fourth, Fifth, and Fourteenth Amendments by seizing her property without a warrant or court order and without due process.  The Court concludes that Van Pelt is also entitled to summary judgment on this claim because there is no dispute of fact that Defendants unlawfully seized Van Pelt's property.

**3.      Unlawful Arrest**

Finally, Van Pelt contends that she is entitled to summary judgment on her claim that Defendants arrested her without probable cause.  The Court agrees because, as discussed above, Defendants illegally entered Van Pelt's apartment and seized her property.  Defendants were not acting within their lawful authority and had no basis to arrest Van Pelt.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Court will deny Defendants' motion for summary judgment, except that the Court will dismiss the excessive force claim against Officer Cordes.  The Court will also grant Van Pelt's motion for partial summary judgment.

An Order consistent with this Opinion will be entered.


Dated:  April 28, 2005                              _____/s/ Gordon J. Quist_____
                                                   GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE